Robert Wayne WILLIAMS,
Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden and The Attorney General of the State of Louisiana, Respondents-Appellees.

No. 81–3159.

United States Court of Appeals,
Fifth Circuit.*
Unit A

June 21, 1982
Rehearing Denied Aug. 12, 1982.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**382**

Richard E. Shapiro, New Orleans, La., for petitioner-appellant.

Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, La., John Sinquefield, Kay Kirkpatrick, Asst. Dist. Attys., Baton Rouge, La., for respondents-appellees.

Before BROWN, CHARLES CLARK, GEE, RUBIN, GARZA, REAVLEY, POL-ITZ, RANDALL, SAM D. JOHNSON, WIL-LIAMS and GARWOOD, Circuit Judges.**

GARZA, Circuit Judge:

We begin our consideration of this case by tracing the steps that led petitioner to this Court. Petitioner Robert Wayne Williams was tried by a jury in East Baton Rouge Parish, Louisiana, and convicted of the crime of first degree murder on April 19, 1979. The following day, the jury sentenced Williams to death. On direct appeal, petitioner's conviction and sentence were affirmed by the Louisiana Supreme Court, *State v. Williams*, 383 So.2d 369 (La.1980), and certiorari was denied by the United States Supreme Court. *Williams v. Louisiana*, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981). This failure to obtain relief on direct appeal led petitioner to apply for a writ of habeas corpus from the Louisiana state court. After this avenue proved equally unsuccessful, petitioner filed an application for a writ of habeas corpus in the United States District Court for the Middle District of Louisiana. That court ruled adversely to petitioner, and so he appealed to this Court. A panel of this Court upheld

** Judge Tate did not participate in the consideration or decision of this case.

the lower court decision, *Williams v. Blackburn*, 649 F.2d 1019 (5th Cir. 1981), but petitioner successfully petitioned for rehearing en banc. Today, for reasons expressed herein, we uphold the original panel decision and find that the death penalty was properly imposed in this case.

Before proceeding to a discussion of the specific errors complained of by petitioner, we briefly describe the sequence of events that culminated in the senseless murder of which petitioner was convicted. On January 5, 1979, Ralph Holmes and Robert Wayne Williams approached a Baton Rouge A & P Supermarket which they intended to rob. Prior to entering, they pulled ski masks over their faces to protect their identities from recognition, and Williams prepared his 12-gauge sawed-off shotgun for use. When they walked inside the store, they spotted the security guard, Willie Kelly, age 67, bagging groceries instead of performing his customary duties. The two men approached Kelly and Holmes attempted to remove the guard's pistol from its holster. He had some difficulty doing this, so Kelly made a move toward the pistol in an effort to free it and thereby aid Holmes. Williams responded to Kelly's move by firing the shotgun in the guard's face at point blank range. The resulting blast severed much of Kelly's head from his body. Police detectives on the scene observed bone fragments, blood, hair, and pieces of skin spread throughout the front of the store. After killing the guard, the two men proceeded to complete the robbery. Before fleeing the scene, however, Holmes pistol-whipped one customer, and Williams accidentally shot two more in the feet.

Six issues are raised by petitioner on rehearing en banc. He contends that: (1) his right to an impartial jury under the Sixth and Fourteenth Amendments was violated by the dismissal for cause of three jurors who never stated their irrevocable opposition to capital punishment; (2) his death sentence violates the due process clause of the Fourteenth Amendment because there was insufficient evidence to support two of the three aggravating circumstances found by the jury, namely, (a) that the petitioner knowingly created a risk of death or great bodily harm to more than one person and (b) that the offense was committed in an especially heinous, atrocious, or cruel manner; (3) the Supreme Court of Louisiana violated his rights under the Eighth and Fourteenth Amendments by reviewing the evidentiary sufficiency of only one of the three aggravating circumstances found by the sentencing jury; (4) the district court erred in denying petitioner an evidentiary hearing on the allegation that he was deprived of the effective assistance of counsel at the guilt and sentencing phases of his capital trial; (5) the district court failed to specifically scrutinize each federal constitutional claim made in the habeas petition; and (6) the comparative review of first degree murder convictions on a judicial district, rather than statewide basis, violates the Eighth Amendment and *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because of its failure to ensure the fair and evenhanded administration of Louisiana's capital punishment statute.

## I

The first point of appeal raised by Williams concerns the exclusion for cause of jurors who, in petitioner's estimation, never demonstrated their irrevocable opposition to capital punishment. He argues that his Sixth and Fourteenth Amendment right to an impartial jury was violated by these dismissals.

The seminal case in this area, *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), recognized the unconstitutionality of a death sentence imposed by a jury from which veniremen had been excused for cause simply because they expressed general objections to the death penalty or had conscientious or religious scruples against its infliction. The Court held that "[w]hatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution." *Id.* at 523, 88 S.Ct. at 1777. The requirements set out

in *Witherspoon* have been echoed by a plethora of subsequent Supreme Court and Fifth Circuit cases. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Maxwell v. Bishop*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Alderman v. Austin*, 663 F.2d 558 (5th Cir. 1981); *Granviel v. Estelle*, 655 F.2d 673 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1636, 71 L.Ed.2d 870, —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Burns v. Estelle*, 592 F.2d 1297 (5th Cir. 1979). Both Courts accept the state's power to exclude veniremen from a jury on the ground

> (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

*Witherspoon, supra*, at 522–23, 88 S.Ct. at 1777 (emphasis in original). At the same time, however, they also recognize that improper exclusion of even one juror on *Witherspoon* grounds removes from the state the power to impose a sentence of death.

Petitioner asserts that three jurors were incorrectly excluded on the basis of their opposition to the death penalty.[1] Close scrutiny of the voir dire examination of each juror is necessary for the resolution of this issue. Two of the jurors in question, Ms. Gooden and Mr. Martin, were interviewed together. The following excerpt of the district attorney's preliminary remarks and the jurors' responses to his inquiries about capital punishment clearly demonstrates the automatic opposition to the death penalty which justifies exclusion on *Witherspoon* grounds.

The State is entitled to a juror that can state that if the case is proven and the statutory requirements involving the aggravating circumstances are shown, and you don't feel that the mitigating circumstances outweigh it, that you be able to return a verdict that would carry the mandatory death penalty. Death in Louisiana is still by electrocution. You may have read that some States have passed lethal injection and this type of thing, but that hasn't been passed in Louisiana. Death is still by electrocution. So I guess my next question is, hearing this explanation and knowing that the State will request the death sentence, if you were satisfied that the State had proved its case, could you return a verdict that would require this defendant to be put to death? . . .

Q: Could you Mrs. Gooden?

A: (Ms. Gooden) I don't think I could.

Q: Even if I proved the case, you wouldn't want to return a verdict that would require the defendant to be put to death?

A: (Ms. Gooden) No, sir.

Q: Mr. Martin, could you return the verdict?

A: (Mr. Martin) Sir, with the degree that I hold by being an officer of the church and I'm representing God, I wouldn't want to do it.

Q: It's my understanding, of course, that all citizens would hesitate. I'm sure you would want to look at the case closely before you return a verdict that would require the defendant to be electrocuted, but it's my understanding that you Mr. Green, Mrs. Gooden and Mr. Martin, could not return a verdict that would require this defendant to be put to death. . . .

A: (Ms. Gooden) No.

A: (Mr. Martin) No.

Trial Transcript, vol. 1, at 83–84.

■ Both Martin and Gooden unequivocally stated their inability to consider the death penalty in this case and thereby dis-

---

1. It is clear that these jurors were excluded on the basis of the first prong of *Witherspoon*: that they would automatically vote against im-

position of the death penalty regardless of the evidence presented.

qualified themselves from jury service. Co-existing with the petitioner's right to an impartial jury, after all, is the State's right to have a jury that is willing to consider all penalties prescribed by law. A refusal to strike said jurors clearly would have infringed this right.

Next, we turn to the voir dire examination of the third juror, Ms. Brou. After the district attorney presented a similar introduction about the death penalty and the State's right to select jurors who are willing to consider all penalties, he engaged in the following colloquy with Ms. Brou:

Q: Assuming that I prove the defendant committed first degree murder and is convicted, assume I prove the statutory requirements of aggravating circumstances, which under Louisiana law make the case appropriate for the death penalty, can you return a verdict that mandates that the defendant be put to death by electrocution?

A: (Ms. Brou) I don't think I could do that.

Q: Okay. I appreciate your being honest with me. And let me ask you this. When you say I don't think I can, what you are telling me, you can't tell me positively that you can; is that correct?

A: (Ms. Brou) I know there is certain cases where you read about them and they are so hideous that you just think, oh, the death penalty would be the only good outcome, but this particular case, I don't know.

Q: As the Judge told you, this is the killing of a—Well, I don't know if the Judge said all that, but I think it is before the jury. This is the A & P robbery, murder that occurred on January the 5th of this year. And it is my understanding that you feel that you could not return the death penalty.

A: (Ms. Brou) Oh, let's see. I'm afraid I couldn't. I would just be thinking in terms of why can't a person like that be rehabilitated rather than exterminated.

Q: So you feel that you could not return the death penalty?

A: (Ms. Brou) No.

Q: Are there any circumstances which you could return a verdict that would require a defendant to be electrocuted?

A: (Ms. Brou) This particular one or just in general?

Q: This particular one.

A: Any circumstances where I could do that?

Q: Yes.

A: (Ms. Brou) Well, of course, I don't know that much about the case. I always think in terms of how hideous the crime is because I don't know that much about it. I don't know. I don't think I can do it.

Trial Transcript, vol. 1, at 185–86 (emphasis added).

The prosecuting attorney immediately moved to strike Ms. Brou for cause and no objection was interposed by defense counsel. We will not speculate about trial counsel's reasons for not objecting. Perhaps he did not want Ms. Brou on the jury for other reasons. But even if he had objected, his objection would not have been well-taken.

Petitioner charges that Ms. Brou's responses fall far short of demonstrating automatic opposition to the death penalty. He attributes the absence of *Witherspoon* talismanic responses on the record to the State's failure to propound hard questions about opposition to the death penalty. We disagree. If one examines the underscored portion of her statement, one clearly finds that she did state that she could not return a death sentence. When the prosecutor inquired again to assure that she could not consider this penalty, Ms. Brou responded that she did not think she could do it. When this response is viewed in conjunction with her previous statement of clear opposition to the death penalty, the record of automatic opposition to the death penalty is established.

■ *Witherspoon* and its progeny do not mandate that a prospective juror aver

that she would refuse to consider the death penalty in every case that could possible arise. If she knows enough about the case to know that she could not consider imposition of the death penalty regardless of what evidence might be presented, she must be excused. Ms. Brou's responses demonstrate that she would be unwilling to consider the death penalty where the crime charged was murder committed during a robbery. She does leave open the possibility that she would consider this penalty in a more "hideous" case. Her unwillingness to do so here, however, is firm.

By means of this appeal, petitioner asks this Court to narrow further the stiff requirements of *Witherspoon* and its progeny

2. A comparison of this case with other recent Fifth Circuit cases in which *Witherspoon* error has been found permits us to judge the completeness of the prosecutor's questioning of Ms. Brou. In *Burns v. Estelle*, 592 F.2d 1297 (5th Cir. 1979), the prosecuting attorney asked the jurors about their opposition to the death penalty in the following language:

> All right. Then will the mandatory penalty of death or imprisonment for life affect your deliberation on any issue of fact, which what you just told me it will, in other words the mandatory penalty of death or imprisonment for life *will affect the deliberations on any issue of fact in this case, is that correct?* *Id.* at 1303 (emphasis added.) This obviously is not equivalent to asking the venireman if he would either automatically vote against the death penalty or if this attitude about the death penalty would prevent him from making an impartial decision about defendant's guilt. Such a preliminary inquiry, not followed by specific questions, provides inadequate basis for striking a juror on *Witherspoon* grounds.

The following discussion between prosecutor and venireman occurred in *Granviel v. Estelle*, 655 F.2d 673 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1636, 71 L.Ed.2d 870, —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982):

> Q: (By Prosecutor) The defendant in this case is charged with capital murder. There are only two punishments for the offense of capital murder and that is either death or life in the penitentiary.
> Now, do you have conscientious scruples against the infliction of the death penalty as a punishment for crime?
> A: I don't know what that means.
> Q: Let me ask you if you, personally sitting as a Juror, could ever vote so as to inflict the death penalty?
> A: No, I don't think I could.

and, in this Court's opinion, thereby infringes the State's right to an impartial jury that is willing to consider all penalties provided by law.[2] According to petitioner's analysis, exclusion of a venireman is impermissible unless he states in response to all questions that he absolutely refuses to consider the death penalty. An equivalent response framed in any other reasonable manner is judged to demonstrate that the individual's position is not firm. We reject such a rigid, unthinking interpretation of *Witherspoon.* Form will not be placed over substance.

## II

Petitioner next urges this Court to find his death sentence violative of the Four-

> Q: That is a *definite prejudice or feeling that you have that you would not change? You just don't feel like you would be entitled to take another person's life in that fashion.*
> A: (Venireman nods.)
> Q: Okay, you could not?
> A: No. I could not.

*Id.* at 684 (emphasis added). The death sentence in this case was reversed because the Court held that the venireman indicated only general scruples against the death penalty. *Enough questions were not asked to determine* whether he would automatically vote against the death penalty or whether his objections would prevent him from making an impartial decision as to guilt.

The instant case suffers from neither the deficiencies of *Burns* or *Granviel.* The district attorney asked a series of questions calculated to ensure that Ms. Brou was stating more than simply conscientious scruples about the death penalty.

A very recent Fifth Circuit *Witherspoon* challenge case, *Alderman v. Austin*, 663 F.2d 558 (5th Cir. 1981), treats another problem found in the voir dire of veniremen but likewise absent here. In *Alderman*, a death sentence was set aside because an extraneous issue introduced by the prosecutor resulted in the exclusion of potential jurors on a broader basis than that permitted by *Witherspoon.* The prosecutor did not limit his inquiry to an individual's opposition to the death penalty; he also asked whether each, as foreman, would be able to sign a verdict that would effect the capital punishment of a defendant. This forced veniremen to frame their answers improperly. The voir dire examination in the instant case properly limits its scope to an inquiry about opposition to the death penalty.

teenth Amendment due process clause because of the insufficiency of evidence to support two of the three aggravating circumstances found by the jury. The jury imposed the death penalty after finding the presence of three aggravating circumstances, any one of which justified the punishment petitioner received. These three aggravating circumstances were: (1) the offender was engaged in the perpetration of armed robbery; (2) the offender knowingly created a risk of death or great bodily harm to more than one person; and (3) the offense was committed in an especially heinous, atrocious, or cruel manner.[3]

Before embarking on a discussion of the substantive law in this section of the appeal, we examine the evolution that has produced the current Louisiana death penalty statute. Prior to the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Louisiana statute permitted the jury to return any one of the following verdicts in a murder case: guilty, guilty without capital punishment, guilty of manslaughter, or not guilty.[4] In 1973, apparently in response to the *Furman* decision, the legislature altered the capital punishment statute from discretionary to mandatory. The amended statute required that the penalty of death be imposed whenever an offender was found guilty of the newly defined crime of first degree murder.[5] The Supreme Court declared this statute unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), holding that "[t]he Louisiana procedure neither provides standards to channel jury judgments nor permits review to check the arbitrary exercise of the capital jury's de facto sentencing discretion." *Id.* at 335, 96 S.Ct. at 3007.

The direction provided by the Supreme Court in *Roberts* led Louisiana to once again change its capital punishment scheme to ensure that a jury has the opportunity to consider all mitigating factors proffered as a basis for a sentence less than death. The statute also requires the jury to find at least one of a list of aggravating circumstances in order to impose a death sentence.[6] When sitting in review of capital

3. La.Code Crim.Pro.Ann. art. 905.4(a), .4(d), and .4(g) (West Supp. 1981).

4. La.Code Crim.Pro.Ann. art. 814 (1967). The murder statute in effect at this time defined the crime as the killing of a human being by an offender with the specific intent to kill or to inflict great bodily harm, or by an offender engaged in the commission of certain serious felonies (aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, and simple robbery). La. Rev.Stat.Ann. § 14:30 (1951).

5. La.Rev.Stat.Ann. § 14:30 (West 1974): First degree murder is the killing of a human being:
 (1) When the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated rape or armed robbery; or
 (2) When the offender has a specific intent to kill, or to inflict great bodily harm upon a fireman or a peace officer who was engaged in the performance of his lawful duties; or
 (3) Where the offender has a specific intent to kill or to inflict great bodily harm and has previously been convicted of an unrelated murder or is serving a life sentence; or

 (4) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; [or]
 (5) When the offender has specific intent to commit murder and has been offered or has received anything of value for committing the murder.
 For the purposes of Paragraph (2) hereof, the term peace officer shall be defined and include any constable, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, district attorney, assistant district attorney, or district attorneys' investigator.
 Whoever commits the crime of first degree murder shall be punished by death.

6. La.Code Crim.Pro.Ann. art. 905.4 (West Supp. 1981):
 The following shall be considered aggravating circumstances:
 (a) the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or simple robbery;
 (b) the victim was a fireman or peace officer engaged in his lawful duties;
 (c) the offender was previously convicted of an unrelated murder, aggravated rape, or

cases, the state Supreme Court must find the presence of at least one aggravating circumstance beyond a reasonable doubt. In addition, the court must examine all possible mitigating circumstances and compare the case with all other murder cases from the affected judicial district in order to ensure that the sentence is not disproportionate. This procedure was strictly followed in the instant case. Petitioner charges that this is not sufficient.

Petitioner contends that in light of the care of the Supreme Court to adopt narrowing constructions of aggravating circumstances, *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), two of the three aggravating circumstances found by the jury cannot stand. Consequently, his argument continues, the sentence of death must fall as well. Petitioner finds support for this conclusion in *Stephens v. Zant*, 631 F.2d 397 (5th Cir. 1980), *cert. granted,* 454 U.S. 814, 102 S.Ct. 90, 70 L.Ed.2d 82 (1981), a case currently pending before the Supreme Court.

In *Stephens,* a panel of this Court vacated a death sentence because one aggravating circumstance found by the jury, a substantial history of serious assaultive criminal convictions, was later held unconstitutional. This action was taken despite the

presence of two other valid aggravating circumstances. The Court based its decision on *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), where the Supreme Court held:

> The verdict against the appellant was a general one. It did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury was instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause.... It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

*Id.* at 368, 51 S.Ct. at 535.

The two challenged aggravating circumstances in this case do not suffer constitutional defects. In *Gregg v. Georgia, supra,* the Supreme Court held that a similar ag-

---

aggravated kidnapping or has a significant prior history of criminal activity;

(d) the offender knowingly created a risk of death or great bodily harm to more than one person;

(e) the offender offered or has been offered or has given or received anything of value for the commission of the offense;

(f) the offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;

(g) the offense was committed in an especially heinous, atrocious, or cruel manner; or

(h) the victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant, or was an eye witness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant.

(i) the victim was a correctional officer or any employee of the Louisiana Department of Corrections who, in the normal course of his employment was required to come in close contact with persons incarcerated in a state prison facility, and the victim was engaged in his lawful duties at the time of the offense.

For the purposes of Subparagraph (b) herein, the term peace officer is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, game warden, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator.

gravating circumstance in the Georgia statute was not unconstitutional on its face.[7] The Court noted that this aggravating circumstance must simply be properly limited by an appellate court, where it serves as the basis for the death sentence. In the instant case, this aggravating circumstance, although found by the jury, was not the basis for appellate approval of the sentence. Since Louisiana law requires that only one aggravating circumstance be found in order to justify imposition of the death penalty, only one circumstance was reviewed.[8] This aggravating circumstance has not been attacked to date in petitioner's series of challenges to his conviction and sentence.

The crucial inquiry in this and every case in which capital punishment has been ordered is whether the jury's sentencing discretion was properly channeled. *E.g., Roberts v. Louisiana, supra.* By statute, the jury's discretion is limited to the extent that only a few types of killings permit consideration of the death penalty. When one or more of the statutory aggravating circumstances is found, the jury must balance this against the mitigating circumstances offered by defendant. *Stephens v. Zant* can be distinguished on the grounds that the unconstitutionally vague aggravating circumstances which the *Stephens* jury found to be present was one that required the jury to understand how to determine the meaning of facts and circumstances not before them as a part of the proof of that crime. This required that the jury be properly guided as to how Georgia classified the aggravating circumstance before they could consider evidence of the other criminal convictions and the impact of this proof on the assessment of the death penalty. The vague words of the Georgia statute failed to guide or channel their discretion.

The instant case is not similarly flawed. The jury was only permitted to weigh the specific facts of the crime in arriving at their decision. The aggravating circumstance of armed robbery-murder was present and unanimously found by the jury. Under Louisiana law this means that the two questioned aggravating circumstances are not necessary to entitle the jury to consider imposition of the death penalty. The extra findings went to the gravity of his crime, not the jury's power to impose the death penalty.

Since the requisite one aggravating circumstance of murder in the course of an armed robbery is clearly present and was unanimously found by the jury, the other two circumstances are only material to deciding whether the aggravating and mitigating circumstances weighed together indicate the death penalty should be imposed. Here, the thing of significance is how the jurors perceived the weight of these actions by petitioner. The weight they assigned in determining whether the petitioner's acts were or were not outweighed by mitigating circumstncesa necessarily o be ested by how they viewed the facts they properly knew. The jury necessarily focused on what Williams had done, not on how Louisiana classified his actions, since they were not instructed on the legal meaning of the terms involved. Louisiana's classifications did not change the weights the jury assigned in any material degree. The lack of precise legal definitions, therefore, affected none of petitioner's substantial rights.

7. Ga.Code Ann. § 27–2534.1 (Supp. 1975) provides, in part:
 (7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.
 Petitioner contends that this Court is precluded from holding the third aggravating circumstance valid because it is bound by the finding of the Louisiana Supreme Court that petitioner "accidentally" shot the others he injured. 383 So.2d at 371. An offender must "knowingly" create a risk of harm to more than one person in order to come within the scope of this circumstance. However, the second discharge of the gun is not relevant here. Although the basis of our decision does not mandate a determination on the presence of this circumstance, we note that whenever a sawed-off shotgun is intentionally fired around a group of persons, the risk of harm to more than one individual is created.

8. The Louisiana Supreme Court found that petitioner committed the murder while engaged in the perpetration of an armed robbery.

It might have been better if the trial judge had permitted the jury to consider only the aggravating circumstances that legally could be present, and if the judge had defined those circumstances for the jury in such a way that their finding that the circumstances were proven had been fully informed, perhaps it could be said that a more fully instructed jury would not have found the aggravating circumstances of heinousness and risk to more than one person to be present. This speculation is beside the mark, however, because the meaningful portions of this verdict, (1) that at least one aggravating circumstance was present and (2) that under the totality of aggravating and mitigating circumstances the death penalty should be imposed, were the product of channeled discretion and are rationally reviewable.

This Court's opinion in *Stephens v. Zant*, relied on so heavily by petitioner, is simply inapposite. We do not confront a facially unconstitutional aggravating circumstance and, therefore, we need not vacate the sentence given. The aggravating circumstances which were not considered and limited by the appellate court do not serve as the basis for the death sentence. We base the sentence on the one circumstance considered by the Louisiana Supreme Court. In so acting, we follow the procedure implicitly utilized in several Supreme Court cases. *See, e.g. Eddings v. Oklahoma*, ─── U.S. ───, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Gregg v. Georgia, supra.*

 In *Gregg*, the first Supreme Court case to consider the constitutionality of an aggravating circumstance very similar to one challenged here, the Court pointed out that it need not discuss two cases where this aggravating circumstance had been found because "[i]n both cases a separate statutory circumstance was also found, and the Supreme Court of Georgia did not explicitly rely on the finding of the seventh circumstance [outrageous or wantonly vile, horrible or inhuman murder] when it upheld the death sentence." 428 U.S. at 201 n.53, 96 S.Ct. at 2938, n.53, 49 L.Ed.2d at 890 n.53. The Supreme Court again implied

approval of the reasoning employed herein in *Godfrey v. Georgia, supra*, where at the same time the Court vacated a death sentence it noted, "[t]he sentences of death in this case rested exclusively on § (b)(7). Accordingly, we intimate no view as to whether or not the petitioner might constitutionally have received the same sentences on some other basis. Georgia does not, as do some states, make multiple murders an aggravating circumstance." 446 U.S. at 432 n.15, 100 S.Ct. at 1767 n.15, 64 L.Ed.2d at 409 n.15. Irregardless of the number of aggravating circumstances returned by the jury, the implication is clear that, in the absence of facial unconstitutionality, one may properly serve as the basis for appellate affirmation of the death sentence. The most recent Supreme Court comment on this issue is found in *Eddings v. Oklahoma, supra*, where after expressing "doubt that the trial judge's understanding and application of this aggravating circumstance [heinous, atrocious, or cruel murder] conformed to that degree of certainty required by our decision in *Godfrey v. Georgia ...,*" ─── U.S. at ───, n.3, 102 S.Ct. at 873 n.3, the Court did not find this a basis for reversal of the death sentence but instead went further to find the judge's failure to consider all possible mitigating factors as the reversible error.

The Louisiana Supreme Court's review of only one aggravating circumstance was entirely proper. We find no violation of either the Eighth or Fourteenth Amendment.

### III

Petitioner contends that the court below erred in denying him an evidentiary hearing on allegations of ineffective assistance of counsel at both the guilt and sentencing phases of his trial.

 First, we examine the claim of ineffective assistance of counsel at the guilt phase of the trial. Petitioner alleges that his attorneys failed to seek suppression of certain inculpatory statements on a well recognized Fourth Amendment ground. The statements in question, which figured importantly in his conviction, were the

fruits of an illegal arrest, according to petitioner; despite the fact that information leading to his arrest was obtained from a confidential informant, the affidavit contains no indication of the reliability of the informant. Petitioner errs in his assessment of the facts. The presentence report contains information from two confidential informants.[9] The affidavit of the second confidential informant amplifies and corroborates the information received from the first. Information from these two sources provided probable cause for arrest.

*Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), established standards for judging the sufficiency of hearsay affidavits to establish probable cause. The Court recognized that an affidavit may be based on hearsay information but specified:

> ... the magistrate must be informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, ... was "credible" or his information "reliable." Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," ... or, as in this case, by an unidentified informant.

378 U.S. at 114–15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. The weakness of the affidavits in the instant case relates to the second prong of the *Aguilar* test. Nowhere in the affidavits is there any indication of the informants' reliability. Petitioner views this as a fatal flaw. We disagree. This Court, in *United States v. Martin*, 615 F.2d 318 (5th Cir. 1980), affirmed the validity of similar affidavits. The Court held that, taken together, the corroboration of the two affidavits served to establish their reliability. The Court pointed out that the usual case in which corroborative evidence validates a tip involves independent verification by police investigation. *See, e.g., Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Squella-Avendano*, 447 F.2d 575 (5th Cir. 1971), *cert. denied*, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971). While this Court has held that substantial corroboration of a tip by another confidential informant does provide evidence of reliability, these cases also reported independent governmental verification of the information. *See United States v. Farese*, 612 F.2d 1376 (5th Cir. 1980); *United States v. Barham*, 595 F.2d 231 (5th Cir. 1979); *United States v. Scott*, 555 F.2d 522, 527 (5th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 610, 54 L.Ed.2d 478 (1977). Even in *Martin*, reliability was not based solely on corroboration by the confidential informant. Some weight was given to the fact that one informant's statement was against his penal interest.

In the instant case, however, corroboration alone serves to satisfy the second prong of *Aguilar*. The statement of one confidential informant is amplified by the other. We believe that the corroboration of details provides the reliability which the *Aguilar* test mandates. Therefore, petitioner had no basis for asserting his statements to

---

9. The affidavit, which contains information from two confidential informants, states, in relevant part:

> On 1–10–79 Dets [detectives] received information from a confidential informant, who stated that he was present when 2 B/MS [black males] and 1 B/F [black female] bragged about beating a white man in the head and shooting an "Old Guard" at the A & P Food Store in Perkins Rd. in Baton Rouge. He saw in their possession, a sawed off shotgun and a large amount of currency. He identified one of the B/MS as Robert Holmes B/M, of 2216 Minnesota, BR, and the other B/M, as "Slim" of 2242 Minnesota, BR. He identified the B/F as Slim's wife. Another C.I. [confidential informant] supplied the name of "Slim" as Robert Williams B/M, of 2242 Minnesota and his wife as being Ann Sims Williams, approx. age 17 of 275 W. Harrison. He also personally knows Ralph Holmes and stated he heard the three talk about "doing" a robbery at the A & P Food Store and killing an "Old Guard."

police were the fruit of an illegal arrest. This claim is without merit.

■ Ineffective assistance of counsel at the sentencing phase of trial is also charged by petitioner. Specifically, petitioner alleges that his trial attorneys failed to conduct an adequate investigation and to prepare properly for the sentencing hearing, since they neglected to interview readily available witnesses in mitigation of punishment and to familiarize themselves with the pertinent law relating to capital sentencing proceedings in Louisiana. In this Circuit, effective assistance of counsel is determined by the standards set forth in *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), *modified*, 289 F.2d 928 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *United States v. Gray*, 565 F.2d 881 (5th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974). Effective counsel does not mean "errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." 280 F.2d at 599.

■ Petitioner asserts that the failure to call certain character witnesses demonstrates the weakness of his counsel. He attached affidavits of these witnesses to his federal habeas corpus application. The district court made the following finding about this issue: "[A] careful review of these affidavits reveals that these witnesses would not have added any new evidence to that which had already been presented at the sentencing hearing by petitioner's mother. These affidavits contain cumula-

tive testimony which had previously been introduced during the trial and at the sentencing hearing." *Williams, supra*, at 1025.[10] The trial transcript of this case reveals that three witnesses who knew petitioner were called at the guilt phase of the trial. The individuals had known the petitioner twelve, nine and one year, respectively. They testified about his drug usage because petitioner based his defense on the inability to conform his conduct to the requirements of the law because of intoxication. What petitioner's present counsel is really objecting to is the trial strategy employed by trial counsel. We do not elect to second guess the trial strategy decisions of competent counsel.

■ Petitioner next argues that trial counsel made a serious error in arguing about the admissibility of photos of the body in front of the jury. He contends that this discussion revealed the gruesome nature of the photos to the jury in graphic terms. This argument is utterly without merit. The "gruesome" facts referred to were the district attorney's remarks that it was heinous to "have your face blown off in front of the people you've worked with and the people that you know and exactly what this man did to the victim in this case." Trial Transcript, vol. 2, at 267. These comments do not introduce to the jury any information not already presented earlier in trial. Furthermore, by presenting this argument in front of the jury, petitioner's counsel had the opportunity to educate the jury about the limited definition of the aggravating circumstance of especially heinous or atrocious crime.[11]

10. Of the six affidavits attached to petitioner's application for post conviction relief, five are from individuals who had known petitioner since childhood but had seen very little of him in recent years. All concluded that drugs or bad influences had brought about his criminal conduct. The other affidavit was that of his older brother, Alvin, who blamed his conduct on the use of "heavy drugs."

11. MR. COVELL: Your Honor, the code provides that one aggravating circumstance is an especially heinous or atrocious crime. I think the Legislature, when they passed that law, had a test or their intent was to judge

the suffering of the victim, not his appearance after death. Now, to my way of thinking, it's a terrible thing that this man is dead, but he died instantly. And it is not of import whether it was a nice, clean, 25 caliber wound or whether it was a shot gun. He did not know what happened. I therefore submit to the Court that these pictures are not relevant because they do not demonstrate or indicate an especially atrocious or heinous crime. I think what the Legislature had in mind were crimes that we hear about such as repeated rapes and murder of a small girl or that sort of thing where the victim suffered.

■ Petitioner's next assignment of error relates to counsel's failure to request limiting instructions on the statutory aggravating circumstances that were considered by the jury. The jury did hear the limited definition of the heinous crime circumstance, however, when counsel argued the admissibility of photos of the body. In addition, counsel presented the jury with a limited definition of both circumstances in his closing argument.[12] Consequently, counsel's inaction does not rise to the level of ineffective assistance of counsel.

■ Petitioner's final argument charges counsel with failure to conduct a thorough pre-trial investigation. Counsel would have discovered many good character witnesses if he had undertaken proper pre-trial investigation, he asserts, and then would possibly have decided not to have petitioner's mother testify but would have depended on favorable testimony from members of the community. This challenge to counsel's performance attempts to do precisely that which is barred by this Court; it invites us to question counsel's trial strategy and judge his performance incompetent if it was not errorless. We decline to take this action. There is little doubt that had trial counsel employed the trial strategy proposed by petitioner, this Court would now face an effectiveness of counsel argument based thereon. Trial counsel in this case made the best of a bad case. He certainly provided reasonably effective assistance. Since we find adequate support in the record for our decision, there is no need to return this case to the court below for an evidentiary hearing. No further judicial time need be wasted on such spurious challenges.

## IV

Next in this series of challenges, petitioner alleges that the district court failed to specifically scrutinize each federal constitutional claim in his habeas petition. Of his thirteen original grounds for post conviction relief, petitioner asserts that eight have never been addressed.[13] He is incorrect.

---

Trial Transcript, vol. 2, at 265–66.

12. The offense was committed in an especially heinous, atrocious or cruel manner. You heard my argument to the Court. What the Legislature has in mind is—the victim, Willie Kelly, died suddenly. I doubt if he had a chance to even realize what was happening to him. The testimony was that they came in, all of a sudden he saw them. He started to make a gesture, we don't know what the gesture was, and he was dead. As I stated, it's unfortunate. It's a sickening thing that the man is dead, but he died instantly. *Like I argued to the judge, and the judge agreed with me because he felt that the pictures should not be introduced into evidence.* It doesn't matter if it's a little nice, clean bullet hole or if it's a shot gun blast that is disgusting and bothers other people around. He died, he died, I believe the prosecutor commented he deserved to die in a more dignified manner. If the prosecution can demonstrate one sort of murder that is dignified, I'd like to hear it.
No murder is dignified.
Trial Transcript, vol. 2, at 284 (emphasis added).
 Defense counsel also presented a limited definition of the other aggravating circumstance:
 Now, every sort of crime in which a weapon's involved or which a murder takes place, certainly anyone in the area is going to be in fear of their lives. I'm sure the Legislature didn't mean that in every case in which a gun was used this would apply. There would be no sense in having this.
Trial Transcript, vol. 2, at 283–84.

13. The specific claims are:
 (3) Petitioner's death sentence violates the due process clause of the Fourteenth Amendment because there was insufficient evidence to support the jury's finding that (a) the offender knowingly created a risk of death or great bodily harm to more than one person; and (b) the offense was committed in an especially heinous, atrocious or cruel manner.
 (4) The jury's finding that the offense was committed in an especially heinous, atrocious or cruel manner was in violation of the decision rendered in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
 (6) The trial court erred in failing to provide the jury with limiting instructions on the statutory aggravating circumstances.
 (7) The Louisiana Supreme Court has adopted inconsistent standards of appellate review thereby increasing the likelihood of arbitrary and capricious sentencing in death cases.
 (9) The death sentence imposed upon petitioner was disproportionate and excessive under Louisiana law and the Eighth and

Three of these claims, numbers three, nine, and twelve, were specifically rejected by the Louisiana Supreme Court. The district court committed no error by concurring with that court's analysis. Our decision in part II of this opinion disposes of the need to discuss claims four, six, and seven, since these are predicated on the faulty assumption that *Stephens v. Zant* applies to this case.[14] Claim number ten attacks the failure to adequately instruct the jury about the weight and role of mitigating circumstances. After closely examining the trial court record, we have determined that this claim is spurious. Claim eleven also concerns mitigating circumstances; here petitioner asserts that lack of statutory guidance about mitigating circumstances renders the Louisiana death penalty statute unconstitutional. This claim is likewise without merit.

## V

As a final point of appeal, petitioner contends that the comparative review of first degree murder convictions on a judicial district, rather than statewide, basis violates the Eighth Amendment and *Furman v. Georgia, supra,* because of its failure to ensure the fair and evenhanded administration of Louisiana's capital punishment statute.[15]

Fourteenth Amendments to the Constitution of the United States.

(10) The trial court erroneously instructed the jury concerning the mitigating circumstances and the role of such circumstances in determining a death sentence.

(11) The Louisiana death penalty statute is unconstitutional under the Eighth and Fourteenth Amendments to the Constitution of the United States.

(12) The trial court erred in allowing the state to present evidence of an armed robbery at petitioner's trial on the charge of first degree murder.

14. Petitioner's counsel also waived number six at oral argument when he stated that error was not committed when the judge failed to give limiting instructions on the statutory aggravating circumstances. He declared that error was committed when the jury found an aggravating circumstance for which there was improper basis.

15. Louisiana Supreme Court Rule 28 governs capital sentence review:

Rule 905.9.1 Capital sentence review (applicable to La.C.Cr.P. Art. 905.9)

Section 1. Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:

(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and

(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and

(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Section 2. Transcript, Record. Whenever the death penalty is imposed a verbatim transcript of the sentencing hearing, along with the record required on appeal, if any, shall be transmitted to the court within the time and in the form, insofar as applicable, for transmitting the record for appeal.

Section 3. Uniform Capital Sentence Report; Sentence Investigation Report.

(a) Whenever the death penalty is imposed, the trial judge shall expeditiously complete and file in the record a Uniform Capital Sentence Report (see Appendix "B"). The trial court may call upon the district attorney, defense counsel and the department of probation and parole of the Department of Corrections to provide any information needed to complete the report.

(b) The trial judge shall cause a sentence investigation to be conducted and the report to be attached to the uniform capital sentence report. The investigation shall inquire into the defendant's prior delinquent and criminal activity, family situation and background, education, economic and employment status, and any other relevant matters concerning the defendant. This report shall be sealed, except as provided below.

(c) Defense counsel and the district attorney shall be furnished a copy of the completed Capital Sentence Report and of the sentence investigation report, and shall be afforded seven days to file a written opposition to their factual contents. If the opposition shows sufficient grounds, the court shall conduct a contradictory hearing to resolve any substantial factual issues raised by the reports. In all cases, the opposition, if any, shall be attached to the reports.

(d) The preparation and lodging of the record for appeal shall not be delayed pending completion of the Uniform Capital Sentence Report.

Section 4. Sentence Review Memoranda; Form; Time for Filing.

In reviewing the sentence in this case, the Louisiana Supreme Court made the following comparison of this case with other murder cases in the district:

The sentence review memoranda shows that there have been 28 murder prosecutions in East Baton Rouge Parish with eleven resulting in first degree murder convictions. Of these eleven, only three of the defendants were sentenced to death. These three cases are strikingly similar in that all three defendants were the actual killers and the crimes all arose during the perpetration of armed robberies. *See State v. Williams,* 383 So.2d 369 (La.1980) (No. 65,563); *State v. Clark,* No. 66,573, appeal pending.

Thus, a review of the sentences imposed in the same parish shows that in the cases most similar to the defendant's, the death penalty was imposed. Our review also shows a dissimilarity between the defendant's case and the other first degree murder convictions in that arguably, there are no aggravating circumstances or there were present mitigating circumstances which justified the jury's recommendation of life imprisonment.

In light of the above considerations, we are unable to conclude that the sentence imposed here is disproportionate to that imposed in similar cases.

383 So.2d at 375 (citations omitted).

■ Although the Supreme Court has referred to statewide reviews as commendable in the effort to ensure against an arbitrary imposition of the death penalty, it has never implied that such review is a constitutional requirement. *Gregg v. Georgia, supra; Proffitt v. Florida, supra; Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The review quoted above provides adequate safeguards against freakish imposition of capital punishment. Just as a venire chosen from a cross section of the community in which the crime is committed is an adequate constitutional safeguard against arbitrary imposition of verdicts and sentences, so a review of the murder convictions imposed within that venire community is sufficient to ensure against arbitrary imposition of the death penalty. We concur with the statement in the panel decision of this case that "we have heard nothing which would even hint at unconstitutionality, and wholly reject the argument." 649 F.2d at 1021.

## VI

After carefully scrutinizing petitioner's many points of appeal, we conclude that each lacks merit. Certainly, we do not take lightly such a judgment where, as here, a human life hangs in the balance. Although we comply with our duty to carefully consider petitioner's claims, we refuse to step further and assist in counsel's efforts to ban the death penalty. Therefore, we decline petitioner's invitation to enter the jury room and speculate on what happened therein. Louisiana has properly narrowed

(a) In addition to the briefs required on the appeal of the guilt-determination trial, the district attorney and the defendant shall file sentence review memoranda addressed to the propriety of the sentence. The form shall conform, insofar as applicable, to that required for briefs.

(b) The district attorney shall file the memorandum on behalf of the state within the time provided for the defendant to file his brief on the appeal. The memorandum shall include:

i. a list of each first degree murder case in the district in which sentence was imposed after January 1, 1976. The list shall include the docket number, caption, crime convicted, sentence actually imposed and a synopsis of the facts in the record concerning the crime and the defendant.

ii. a synopsis of the facts in the record concerning the crime and the defendant in the instant case.

iii. any other matter relating to the guidelines in Section 1.

(c) Defense counsel shall file a memorandum on behalf of the defendant within the time for the state to file its brief on the appeal. The memorandum shall address itself to the state's memorandum and any other matter relative to the guidelines in Section 1.

Section 5. Remand for Expansion of the Record. The court may remand the matter for the development of facts relating to whether the sentence is excessive.

juries' sentencing discretion in capital cases. The Louisiana Supreme Court conducts thorough and proper review of all cases.[16] Chief Justice Burger, in his dissent in *Eddings v. Oklahoma, supra,* expressed a thought most relevant here: "It can never be less than our most painful of duties to pass on capital cases . . . However, there comes a time in every case when a court must 'bite the bullet.'" *Id.* —— U.S. at ——, 102 S.Ct. at 883. That time has arrived.

AFFIRMED.

RANDALL, Circuit Judge, with whom RUBIN, POLITZ and JERRE S. WILLIAMS, Circuit Judges, join, concurring in part and dissenting in part:

Because I think that the jury that convicted the defendant was fatally tainted by the improper exclusion of a juror for cause, I respectfully disagree with the majority and I would, on that ground alone, reverse the judgment of the district court denying the writ as to the sentencing phase and remand for a new sentencing hearing. That disposition would render it unnecessary to consider the remaining asserted constitutional errors in the sentencing phase. Since the majority is required to address those errors by virtue of its conclusion (and based on the premise) that the juror was properly excluded, I shall address the majority's conclusions as to those errors. With respect to the asserted errors stemming from the lack of sufficient evidence to support two of the three aggravating circumstances found by the jury, I believe that this court is required by the Supreme Court's decision in *Zant v. Stephens,* —— U.S. ——, 102 S.Ct. 1856, 72 L.Ed.2d 222

(1982), to certify to the Supreme Court of Louisiana the same question that the Supreme Court in *Zant* certified to the Supreme Court of Georgia. I respectfully disagree with the majority that the two cases can be distinguished on a principled basis, and I dissent from the implicit decision of the majority not to certify that question to the Supreme Court of Louisiana. I concur in the balance of the judgment rendered in Parts III and IV of the majority opinion although in one instance for a different reason than that set forth in the majority opinion.

I.

Veniremen with reservations about capital punishment may be excluded from jury service *only* if they make *unmistakably clear* that:

> "(1) they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*"

*Witherspoon v. Illinois,* 391 U.S. 510, 522–23 n.21, 88 S.Ct. 1770, 1777 n.21, 20 L.Ed.2d 776 (1968) (emphasis in original).

There was nothing in the State-Brou colloquy to indicate that Ms. Brou's attitude toward the death penalty would prevent her from making an impartial decision as to Williams' guilt, and the State does not rely on that ground for her exclusion. The majority finds, however, that Ms. Brou voiced automatic opposition to imposition of capital punishment without regard to any evidence that might be developed at trial.[1]

---

**16.** We note in passing that since implementation of Louisiana's current death penalty scheme, the Louisiana Supreme Court has vacated more death sentences than it has affirmed. The sentence of death was vacated in the following cases: *State v. Willie,* 410 So.2d 1019 (La.1982); *State v. Lindsey,* 404 So.2d 466 (La.1981); *State v. Smith,* 400 So.2d 587 (La. 1981); *State v. Sylvester,* 400 So.2d 640 (1981); *State v. Williams,* 392 So.2d 619 (La.1980); *State v. Culberth,* 390 So.2d 847 (La.1980); *State v. Myles,* 389 So.2d 12 (La.1980); *State v.*

*Sonnier,* 380 So.2d 1 (La.1980); *State v. Parker,* 372 So.2d 1037 (La.1979); *State v. English,* 367 So.2d 815 (La.1979). We exclude from the foregoing list two cases in which the sentence was vacated but subsequently reimposed and affirmed. *State v. Sonnier,* 402 So.2d 650 (La. 1981); *State v. Monroe,* 397 So.2d 1258 (La. 1981).

**1.** The majority does not contend that Williams is barred, under the holding of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

The majority opinion sets forth a portion of the colloquy with Ms. Brou, underscoring one question and one response. Then, in three sentences, the majority construes that

594 (1977), from asserting his challenge, in this habeas corpus proceeding, to the exclusion of Ms. Brou because of his trial counsel's failure to object to her exclusion. I agree.

This court has recently discussed the reason why the *Sykes* bar cannot now be raised: First, the State did not contend in the district court that Washington's *Lockett* [438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973] claim is barred by Mississippi's contemporaneous objection rule and *Sykes*. As such, the State itself is precluded from raising at this late date any claim that Washington should be barred under a state-law theory of procedural default, for "[a]s a general principle of appellate review, this court will not consider a legal issue or theory that was not presented to the [federal district court]." *Noritake v. M/V Hellenic Champion*, 627 F.2d 724, 732 (5th Cir. 1980). *See, e.g., Smith v. Estelle*, 602 F.2d 694, 708 n. 19 (5th Cir. 1979) (State waived its *Sykes* argument by failing to raise it in the federal habeas hearing prior to its motion for a new trial), *aff'd*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *LaRoche v. Wainwright*, 599 F.2d 722, 724 (5th Cir. 1979) (State waived its *Sykes* argument by failing to raise it in habeas proceedings in federal district court).

*Washington v. Watkins*, 655 F.2d 1346, 1368 (1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

In this case the State has never alleged a *Wainwright v. Sykes* bar to this claim despite the following facts. Williams' trial counsel did not object to Ms. Brou's exclusion for cause; neither did his counsel argue that point in his direct appeal to the Louisiana Supreme Court. (Indeed, Williams elsewhere assigns this failure as one respect in which his trial counsel rendered constitutionally ineffective assistance.) After that court affirmed his conviction and sentence, Williams changed lawyers. The *Witherspoon* issue appears to have been raised for the first time in Williams' petition for certiorari. After the Supreme Court denied certiorari, Williams urged his *Witherspoon* grounds in a petition for post-conviction relief in the Louisiana state court in which he was convicted. The State, in response, did not argue that Williams had waived this argument; rather, it contended simply that there had been no *Witherspoon* violation. Nonetheless, in rejecting this argument when it denied Williams' requests for post-conviction relief and a stay of execution pending appeal, the state court concluded without citation of authority that "[t]his matter deals with jury selection and was or should have been considered on appeal. It is not the proper subject for post-conviction re-

testimony to establish a "record of automatic opposition to the death penalty:"

If one examines the underscored portion of her statement, one clearly finds that

lief." When the Louisiana Supreme Court then refused to stay Williams' execution, no member of that court addressed either the waiver issue or the merits of Williams' *Witherspoon* argument, although some of the justices indicated that they thought others of Williams' arguments had some merit.

When Williams filed this action in federal district court, he again raised his *Witherspoon* argument as his first ground for habeas relief. In his initial pleading, he argued at some length, and with considerable citation of authority, that as a matter of Louisiana law, his trial counsel's failure to object to Ms. Brou's exclusion had not waived this point. In responding to his habeas petition, however, the State again did not argue waiver and *Wainwright v. Sykes*; rather, it again contended that there had been no *Witherspoon* violation. Neither did the State claim that Williams had failed to exhaust his state remedies. The district court did not mention waiver, but went directly to the merits of this claim in concluding, without any further discussion or visible analysis, that "[a] careful review of pages 83, 84, 185 and 186 of the trial transcript which sets [*sic*] forth the voir dire examination of the three jurors in question clearly shows that the mandates set forth by the United States Supreme Court in the *Witherspoon* and *Adams* decisions were strictly adhered to and followed by the trial court."

In briefing this argument for the panel, Williams again contended that as a matter of Louisiana law, his trial counsel's failure to object had not waived his *Witherspoon* claim. Again, the State made no mention whatsoever of waiver in its response, although it did quote the portions of the transcript that indicated the failure to object. The panel opinion nowhere mentions waiver, but instead adopted in full the conclusion of the district court on the merits of this issue.

The State, even in its post *en banc* brief to this court stated: "The State is not arguing that the defense should be precluded from alleging a *Witherspoon* error simply because no objection was raised at trial." Thus, there is no procedural bar to a decision, on the merits, of Williams' *Witherspoon* claim.

Finally, the Supreme Court's recent decisions in *United States v. Frady*, —— U.S. ——, —— — ——, 102 S.Ct. 1584, 1591–1595, 71 L.Ed.2d 816 (1982) (§ 2255 actions); *Engle v. Isaac*, —— U.S. ——, ——, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) (§ 2254 actions), dealing with *Wainwright v. Sykes* do not address a situation in which the State elects not to assert a *Wainwright v. Sykes* bar.

she did state that she could not return a death sentence. When the prosecutor inquired again to assure that she could not consider this penalty, Ms. Brou responded that she did not think she could do it. When this response is viewed in conjunction with her previous statement of clear opposition to the death penalty, the record of automatic opposition to the death penalty is established.

Thus, the majority transforms Ms. Brou's serious reservations about assessment of the death penalty in some circumstances, perhaps in the circumstances of this case, into *automatic* opposition to the death penalty regardless of any evidence developed at trial. This method of analysis is flawed; the conclusion, incorrect. Moreover, the majority's focus on *one* sentence, rather than the whole colloquy, does violence to the mandate of *Witherspoon* and its inherently cautious approach to exclusion of jurors. The proper method of analysis, it seems to me, is to examine her responses as a whole, mindful of the analysis set forth in *Witherspoon.*

The essence of that analysis is, in the words of *Witherspoon* itself, that veniremen "cannot be excluded for cause simply because they indicate that there are *some kinds* of cases in which they would refuse to recommend capital punishment;" that a "prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him;" and that a venireman may be asked "that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death *regardless of the facts and circumstances that might*

emerge *in the course of the proceedings."* *Witherspoon v. Illinois,* 391 U.S. at 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (emphasis added).

The colloquy demonstrates that Ms. Brou thought that there were *some* cases where the death penalty should be returned and some where it should be refused. ("I know there is certain cases where you read about them and they are so hideous that you just think, oh, the death penalty would be the only good outcome....") Thus, Ms. Brou, it seems to me, is the very embodiment of the venireman referred to in *Witherspoon* who cannot be excluded because she distinguishes between the types of cases in which she could recommend the death penalty from those in which she could not.[2] A juror must be permitted to say, "I am willing to consider all the facts and circumstances of this case; but if all that emerges here is a murder committed during the course of a robbery, I do not think I could recommend the death penalty." Ms. Brou said no more.

Furthermore, questions by the State to Ms. Brou, in contravention of the Supreme Court's instruction in *Witherspoon* that a prospective juror cannot be expected to say in advance of trial whether he or she would, in fact, vote for the extreme penalty in the particular case, were improper; the majority's reliance on her responses to support its finding of automatic opposition is equally so. ("Her unwillingness to do so here, however, is firm.") No juror can be expected to decide, before trial, whether this is the type of case in which the death penalty can be assessed. To require such a commitment flies in the face of the teachings of *Witherspoon.*

**2.** *Witherspoon* holds that a venireman may not be excluded for cause simply because he or she indicates that there are some kinds of cases in which he or she would refuse to recommend capital punishment. It seems to me that this is no less true where the class of cases in which a venireman would refuse to recommend capital punishment happens to be coextensive with a class of cases defined by one of the State's statutorily-prescribed aggravating circumstances. Specifically, if it is the case that Ms. Brou would refuse to recommend capital punishment where the only aggravating circumstance was

the co-existence of a murder and a robbery, the fact that she would refuse to recommend the death penalty in one class of cases where the State would permit her to recommend it is not grounds for her exclusion as a juror. This conclusion seems to me to be mandated by the fact that in Louisiana, the statutory scheme permits a juror to refuse to recommend the death penalty even if *all* jurors have found the existence beyond a reasonable doubt of one or more aggravating circumstances which outweigh any mitigating circumstances.

Even were the questions proper, her responses were not, as the majority states, "firm." They were vacillating. ("Well, of course, I don't know that much about the case. I always think in terms of how hideous the crime is because I don't know that much about it. I don't know. I don't think I can do it.") At most, Ms. Brou's statements about the *Williams* case reflected uncertainty as to her decision because she had not been specifically apprised of the facts.[3] This circuit's precedent precludes her exclusion. *Granviel v. Estelle*, 655 F.2d 673, 678–80 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Burns v. Estelle*, 626 F.2d 396, 397–98 (5th Cir. 1980) (en banc).

3. Ms. Brou's uncertainty about the death penalty is reflected not only in the colloquy between the State and Ms. Brou quoted in the majority opinion, but also in the following exchange between Ms. Brou and the trial judge which immediately preceded the State-Brou colloquy:

THE COURT: Do either of you know of any reason why you feel that you should not or could not serve on this jury?

....

MS. BROU: Well, I'm wondering about the question of capital punishment. Does that disqualify you if you don't have a firm conviction about that?

THE COURT: I'm sure that the attorney for the State will ask you that question so I will defer that until later.

The State then commenced its voir dire examination of Ms. Brou, and the prosecutor began with a statement of the purpose of his questioning. Midway through that statement, the prosecutor made clear his aversion to a juror who is unable to give him, in advance of trial, the proper assurances about what the juror's ultimate decision in the case will be.

The State is entitled to have a juror that can say, yes, I can return a verdict requiring the death penalty, if the case is proven to me and if the aggravating circumstances are proven to me. So, if you don't know at this point and you are not able to tell me, then that doesn't really help me. Because I don't know what your decision will be down the road. So, my question is also framed in this manner.

The prosecutor then asked the question that begins the portion of the State-Brou colloquy quoted at page 6 of the majority opinion.

4. Although, as will be seen, the majority under its analysis does not have to address the question whether there was sufficient evidence to support the findings that the offender knowingly created a risk of death or great bodily harm

In summary, the majority's conclusion that the exclusion of Ms. Brou was proper cannot be justified under *Witherspoon.*

## II.

Williams asserts several errors relating to two of the three aggravating circumstances found by the jury and the method by which his sentence was reviewed by the Supreme Court of Louisiana. The two challenged aggravating circumstances were: (1) the offender knowingly created a risk of death or great bodily harm to more than one person; and (2) the offense was committed in an especially heinous, atrocious, or cruel manner.[4]

to more than one person, and the offense was committed in an especially heinous, atrocious or cruel manner, it seems clear to me, after reviewing this case and the decisions of the Supreme Court of Louisiana adopting narrowing constructions of aggravating circumstances 905.4(d) (knowing creation of risk of death or great bodily harm to more than one person) and 905.4(g) (offense committed in an especially heinous manner), that the petitioner is correct in his third claim for relief: no rational trier of fact could have found proof of either of these aggravating circumstances (as they are defined by the Louisiana Supreme Court) beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). Insofar as the heinousness of the crime is concerned, the victim was shot immediately after the defendant raised his gun; he died instantly. The defendant did not torture or inflict unnecessary pain on the victim. Insofar as the knowing creation of a risk of death or great bodily harm to more than one person is concerned, the focus is on whether the defendant *contemplated* and *caused* the creation of great risk of death or of great bodily harm to more than one person. The defendant shot the security guard at point blank range and although customers were nearby in the store, it could not be found beyond a reasonable doubt that the defendant knowingly created a risk of death or great bodily harm to any of them. Two customers were hit in the foot by shot gun pellets when the defendant accidentally (to use the word employed by the majority opinion of the Louisiana Supreme Court) dropped the shotgun and the gun discharged when it hit the floor. Clearly the defendant did not *contemplate* injury to anyone when he dropped the gun. *See State v. Monroe*, 397 So.2d 1258 (La.1981); *State v. Culberth*, 390 So.2d 847 (La.1980); *State v. English*, 367 So.2d 815 (La.1979).

A. *What Has the Majority Opinion Held?*

Part II of the majority opinion begins by setting forth Williams' claim that his death sentence is violative of the due process clause of the fourteenth amendment because of the insufficiency of the evidence to support two of the three aggravating circumstances found by the jury. The opinion then focuses on whether the two challenged aggravating circumstances suffer constitutional defects under *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). It holds that, because the Louisiana Supreme Court did not review the two challenged circumstances, it cannot be said to have adopted an unconstitutionally broad construction of them in violation of *Gregg* and *Godfrey*. This facile distinction between what might be called an act of commission (*Godfrey*) and an act of omission (*Williams*) misses the point of *Gregg* and *Godfrey*. The issue which *Gregg* and *Godfrey* present for *Williams* is whether appellate affirmance of a death penalty based in part on jury findings of two aggravating circumstances that are the product of unchanneled and open-ended constructions of those circumstances can constitutionally be sustained.

The majority turns to the issue whether the jury's sentencing discretion was properly channeled.[5] The majority begins by distinguishing *Stephens v. Zant*, 631 F.2d 397 (5th Cir. 1980), *cert. granted sub nom. Zant v. Stephens*, 454 U.S. 814, 102 S.Ct. 90, 70 L.Ed.2d 82 (1981), certifying a question of state law to the Supreme Court of Georgia, *sub nom. Zant v. Stevens,* —— U.S. ——, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), on the ground that in *Stephens* the unconstitutionally vague aggravating circumstance found by the jury was one that required the jury to assess the import of facts and circumstances not before the jury as a part of the proof of the crime, whereas in this case, the jury had only to weigh the facts of the crime itself in arriving at its decision. The former requires proper jury guidance per *Stephens*. The majority states that the latter does not, citing no authority. The presence of a properly found aggravating circumstance cannot be used to distinguish the two cases because such a circumstance existed in each of them. The majority then goes on to assess the impact of the two potentially flawed

---

**5.** The majority states that Williams' attorney waived, at the *en banc* oral argument, Williams' ground six: the failure of the trial court to instruct the jurors on the proper scope of the statutory aggravating circumstances obviated the constitutionally required "guided discretion" that is a hedge against the arbitrary and capricious imposition of a death sentence.

I question the propriety of a claim of waiver at oral argument where there is no official transcript of the proceeding. In any event, a review of the oral argument tape indicates that the attorney made no such waiver:

THE COURT: Do I understand you to tell us that the trial judge errs when he reads to the jury the articles or sections of the code or statute involved and said this is the law in this area. Now you apply what evidence you heard . . . to the extent it fits this law and give us a decision. If he speaks to one thing, its an aggravating circumstance for which there was no evidence entered that that's a tainted jury?

COUNSEL: I submit, your honor, that that's an issue that's unresolved in Louisiana, but I do think that if the trial judge submits erroneous aggravating—the jury returns erroneous aggravating circumstances even

though the trial judge may properly submit a list, the jury returns an erroneous aggravating circumstance indicating that it considered that factor in reaching a sentencing decision. That's where the error rises.

THE COURT: That's different from him taking the article and reading 905 and says here's what the law says?

COUNSEL: I submit, I misspoke before, your honor. I think that its the juror's return of the aggravating circumstance indicating that it took that improper factor into account when it returned the death sentence. That is the error.

It is clear that the attorney was distinguishing a jury's *consideration* of aggravating circumstances as grounds for error from a jury's *finding* of aggravating circumstances as grounds for error. The question to which the attorney responded was not whether the trial judge erred in failing to give instructions which limited the application of each of the aggravating circumstances contained in any list read to the jury. Additionally, the attorney specifically reiterated this ground number six in his post *en banc* argument supplemental brief. There was no waiver.

aggravating circumstances found by the jury. Those circumstances are described as going to the gravity of Williams' crime and as material to deciding whether the aggravating and mitigating circumstances weighed together indicate that the death penalty should be imposed. I agree. Why, then, since the jury may have assigned a degree of gravity or weight to Williams' crime that was erroneous under Louisiana law, are we not compelled to vacate his sentence? Because, according to the majority opinion, the jury assigned that weight simply by "review[ing] the facts they properly knew. The jury necessarily focused on what Williams had done, not on how Louisiana classified his actions, since they were not instructed on the legal meaning of the terms involved." The majority tells us that the very absence of adequate, narrowing instructions on the two challenged aggravating circumstances means that the jury did not in fact *classify* Williams' actions in the manner contemplated by Louisiana law. They couldn't have done so, because they weren't told *how* to do it. This analysis of what the jury did cannot be squared with the facts. The only hard evidence we have of what the jury did is the Jury Recommendation, signed by the foreman and delivered to the court, all as required by Louisiana law.[6] It is set forth in full below:

### JURY RECOMMENDATION

#### Filed April 19, 1979

Article 905.7 Form of recommendations

Having found the below listed statutory aggravating circumstance or circumstances and, after consideration of the mitigating circumstances offered, the jury recommends that the defendant be sentenced to death.

Aggravating circumstance or circumstances found:

**6.** I note that the Jury Recommendation is in the form specified by La.Code Crim.Proc.Ann. art. 905.7 (West 1976), which *requires* the jury to list all the statutory aggravating circumstances that they find. Article 905.7 is doubtless constructed to facilitate the appellate review contemplated by *Gregg v. Georgia*, 428 U.S. at 195, 96 S.Ct. at 2935 ("Where the sentencing au-

Article 905.4

The offender was engaged in the prepetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery.

The offender knowingly created a risk of death or great bodily harm to more than one person.

The offense was committed in an especially heinous, atrocious or cruel manner.

s/ Claude H. Sims, Jr.
Foreman
April 19, 1979

or

The jury unanimously recommends that the defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.

s/ _____
Foreman

The portion of the Recommendation beginning with "Article 905.4 . . ." through the signature of the foreman is written in the handwriting of the foreman. The jury clearly thought they were finding the existence of three aggravating circumstances set forth in Article 905.4, as they were instructed to do. Though they were not required to do so, they carefully gave the court a statutory reference for good measure. The jury did focus on how Louisiana classified Williams' actions, albeit wrongly in the case of two of the aggravating circumstances.[7] As we shall see below, there is simply no way to tell whether the jury's mistaken *classification* of Williams' actions changed the weights the jury assigned in its balancing of aggravating and mitigating circumstances. The majority, however, focuses on what *it* declares to be "the meaningful portions of this verdict, (1) that at least one aggravating circumstance was present and (2) that under the totality of aggravating and

thority is required to specify the factors it relied upon in reaching its decision, the further safeguard of meaningful appellate review is available to ensure that death sentences are not imposed capriciously or in a freakish manner.").

**7.** See note 4, *supra*.

mitigating circumstances the death penalty should be imposed." But why are judges qualified to say what were the meaningful portions of the Recommendation insofar as the members of the jury were concerned? Furthermore, as will also be developed below, the notion that once having found one valid aggravating circumstance, the jury should be and is permitted to evaluate the circumstances of the offense free of guided or channeled discretion ignores the requirements of capital sentencing law as it has developed during the last ten years.

The majority then moves on to announce a new principle of habeas review. The majority states: "The aggravating circumstances which were not considered and limited by the appellate court do not serve as the basis for the death sentence." Although it is somewhat unclear, what the majority appears to be saying is that, under Louisiana law (no citations provided), the aggravating circumstances not reviewed by the Louisiana Supreme Court "do not serve as the basis for the death sentence." The majority then goes on to say "[w]e base the sentence" on the one circumstance which that court did review. Since we are not assessing the sentence, what the majority must be saying is that this court, in reviewing the constitutionality of the petitioner's sentence under 28 U.S.C. § 2254, will review only the aggravating circumstance reviewed by the Louisiana Supreme Court. The majority cites as support for this method of habeas review three Supreme Court cases in each of which certiorari was granted to review the decision of the supreme court of a state affirming a conviction and sentence on direct appeal—*Gregg v. Georgia, supra, Godfrey v. Georgia, supra,* and *Eddings v. Oklahoma,* —— U.S. ——, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The cases cited by the majority do not support the majority's rule of habeas review, nor do they support a similar rule of appellate review. The text accompanying note 53 to the Supreme Court's opinion in *Gregg v. Georgia,* 428 U.S. at 200, 96 S.Ct. at 2938, is addressed simply to the construction placed by the Supreme Court of Georgia on the (b)(7) aggravating circumstance—that the

offense was "outrageously or wantonly vile, horrible and inhuman." The Supreme Court addressed in the text the one reported case in which the Supreme Court of Georgia had affirmed a death sentence based solely on a (b)(7) finding and noted that it was a horrifying torture-murder. Note 53 to the opinion canvasses the only two other reported cases of sentences based in whole or in part on (b)(7) and notes that the Supreme Court of Georgia did not contribute to the gloss on (b)(7) in those cases because it did not rely on (b)(7) when it upheld the death sentences. There is no discussion or analysis in note 53 of the propriety of this method of appellate review; that was not the focus of the note.

In *Godfrey v. Georgia, supra,* the Supreme Court vacated a death sentence based solely on (b)(7). It had no occasion in *Godfrey* itself to consider the method of appellate review of a sentence based on multiple aggravating circumstances.

In *Eddings v. Oklahoma, supra,* the Supreme Court vacated a death sentence because it found that the Oklahoma trial court and Court of Criminal Appeals placed limitations on the mitigating evidence they would consider in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Having done so, it had no occasion to consider the method of appellate review of a sentence based on multiple aggravating circumstances. To the extent that any conclusion can be drawn from notes 3 and 4 (*Eddings v. Oklahoma,* —— U.S. at —— nn. 3 & 4, 102 S.Ct. at 873 nn. 3 & 4) to the Supreme Court's opinion in *Eddings* about the Court's position on appellate review, it seems to me that the Court is suggesting that the trial court on resentencing should reconsider its "heinous, atrocious or cruel" finding; it is noteworthy that reconsideration is suggested in a case in which there were two other aggravating circumstances found by the sentencing judge.

B. *What is the Import of Zant v. Stephens?*

The majority does not address or even advert to the Supreme Court's opinion in

*Zant v. Stephens*, —— U.S. ——, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982). It is clear from the manner in which the Court defined the question posed to it in *Zant* that *Williams* cannot be distinguished on the basis that the *Zant* jury had to assess the import of facts and circumstances not before the jury as part of the proof of the crime, whereas in *Williams*, the jury had to weigh only the facts of the crime itself.[8] The question was defined in *Zant* as: "whether a reviewing court constitutionally may sustain a death sentence as long as at least one of a plurality of statutory aggravating circumstances found by the jury is valid and supported by the evidence." *Id.* —— U.S. at ——, 102 S.Ct. at 1858 (emphasis added). The Georgia Supreme Court had consistently stated that it could constitutionally sustain a death sentence in those circumstances. *Gates v. State*, 244 Ga. 587, 261 S.E.2d 349, 358 (1979), *cert. denied*, 445 U.S. 938, 100 S.Ct. 1332, 63 L.Ed.2d 772

(1980). The Court stated that the Georgia Supreme Court had never articulated the state law premise for that conclusion. *Zant v. Stephens*, —— U.S. at ——, 102 S.Ct. at 1858. Such articulation, according to the Court, would be relevant to its analysis of the case. *Id.* —— U.S. at ——, 102 S.Ct. at 1859.

The Court then suggested several possible bases for the Georgia rule.[9]

It may be that implicit in the rule is a determination that multiple findings of statutory aggravating circumstances are superfluous, or a determination that the reviewing court may assume the role of the jury when the sentencing jury recommended the death penalty under legally erroneous instructions. In this Court, the Georgia Attorney General offered as his understanding the following construction of state law: The jury must first find whether one or more statutory aggravat-

---

**8.** The majority opinion appears to distinguish *Stephens* on the ground that the flawed aggravating circumstance in *Stephens* was "facially unconstitutional," whereas the two challenged aggravating circumstances in *Williams* are not facially unconstitutional per *Gregg* but are only alleged to be unconstitutional as applied. I fail to see why that distinction makes any sense at all, and no explanation is offered by the majority. As Justice Dennis said, dissenting in *State v. Monroe*, 397 So.2d 1258, 1281: "A verdict based upon evidence insufficient for a finding beyond a reasonable doubt is just as unconstitutional as one based on a facially unconstitutional statute. *Jackson v. Virginia*, 443 U.S. 307 [,314, 320–24], 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)."

**9.** The different assumptions held by members of the Supreme Court as to the meaning and constitutionality of the Georgia Supreme Court's position were illustrated in the Court's opinion in *Zant*.

In *Drake v. Zant*, 449 U.S. 999, 101 S.Ct. 541, 66 L.Ed.2d 297 (1980), the Court declined to grant certiorari and vacate the judgments in two Georgia cases in which the death sentences—premised in part on the (b)(7) aggravating circumstance—were imposed prior to our decision in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Justice Stevens, concurring in the disposition, expressed the opinion that the Georgia Supreme Court's position was so clear that there was no need to remand the cases for reconsideration in light of *Godfrey*. *Id.*, at 1000, 101 S.Ct. at 542. Dissenting from the

denial of certiorari, Justice Stewart stated that if one aggravating circumstance found by the jury "could not constitutionally justify the death sentence, Georgia law would prohibit a further finding that the error was harmless simply because of the existence of the other aggravating circumstance." *Id.*, at 1001, 101 S.Ct. at 542. He believed that the Georgia Supreme Court's position on the issue was inconsistent with the Georgia capital punishment scheme because "only the trial judge or jury can know and determine what to do when upon appellate review it has been concluded that a particular aggravating circumstance should not have been considered in sentencing the defendant to death." *Ibid.* JUSTICE WHITE, also dissenting, would have remanded for reconsideration in light of *Godfrey*, a disposition that "would allow the Georgia Supreme Court in the first instance to determine whether the death penalty should be sustained without regard to the validity of the *Godfrey* circumstance." *Id.*, at 1002, 101 S.Ct. at 543. He did "not understand the Georgia cases ... to hold either that the Georgia Supreme Court is without power to set aside a death penalty if it sustains only one of the aggravating circumstances found by the jury or that, although the court has that power, it invariably will not disturb the death penalty in such situations." *Ibid.*
*Zant v. Stephens*, —— U.S. at ——, n.2, 102 S.Ct. at 1857 n.2.

ing circumstances have been established beyond a reasonable doubt. The existence of one or more aggravating circumstances is a threshold finding that authorizes the jury to consider imposing the death penalty; it serves as a bridge that takes the jury from the general class of all murders to the narrower class of offenses the state legislature has determined warrant the death penalty. After making the finding that the death penalty is a possible punishment, the jury then makes a separate finding whether the death penalty should be imposed. It bases this finding "not upon the statutory aggravating circumstances but upon all the evidence before the jury in aggravation and mitigation of punishment which ha[s] been introduced at both phases of the trial."

*Zant v. Stephens,* —— U.S. at ——, 102 S.Ct. at 1858.

The Court concluded:

In view of the foregoing uncertainty, it would be premature to decide whether such determinations, or any of the others we might conceive as a basis for the Georgia Supreme Court's position, might undermine the confidence we expressed in *Gregg v. Georgia, supra,* that the Georgia capital-sentencing system, as we understood it then, would avoid the arbitrary and capricious imposition of the death penalty and would otherwise pass constitutional muster.

*Id.* —— U.S. at ——, 102 S.Ct. at 1859.

The Court then certified the following question to the Supreme Court of Georgia.

What are the premises of state law that support the conclusion that the death sentence in this case is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury.

*Id.* —— U.S. at ——, 102 S.Ct. at 1859.

In view of the importance of the state-law premises for the Georgia Supreme Court's rule to the constitutional issue in *Zant* and the resulting decision of the Supreme Court to certify to the Georgia Supreme Court an inquiry into those premises, we must in *Williams* consider what the Lou-

isiana rule is and what the state-law premises for that rule are.

The Louisiana Supreme Court has apparently borrowed the Georgia Supreme Court's rule on aggravating circumstances.

At the present we know of no constitutional requirement that a death sentence be vacated whenever the jury errs in its finding of a statutory aggravating circumstance. We note that the Georgia legislature has directed the Georgia Supreme Court to determine whether "the evidence supports the jury's or judge's finding of a statutory aggravating circumstance ...," Ga.Code Ann. § 27–2537(e) (emphasis added), and that this provision was quoted with approval in *Gregg v. Georgia, supra.* As stated by the Georgia Supreme Court in *Gates v. State,* 244 Ga. 587, 599, 261 S.E.2d 349, 358 (1979):

"Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not so taint the proceedings as to invalidate the other aggravating circumstance found and the sentence of death based thereon. *Gregg v. State,* 233 Ga. 117, 127–128, 210 S.E.2d 659 (1974); *Gregg v. Georgia,* supra, 428 U.S. [153] at 161, 162 [96 S.Ct. 2909 at 2919–2920, 49 L.Ed.2d 859] ... The erroneous application of the statutory aggravating circumstance of 'depravity of mind to the victim' ... does not invalidate the valid parts of the verdict of the jury."

*State v. Monroe,* 397 So.2d 1258, 1276 (La. 1981). The Louisiana court has restated this rule in the context of review of death sentences.

[I]f the jury finds more than one statutory aggravating circumstance and one is clearly supported by the record, it is unnecessary to overturn the sentence because one (or more) of the additional statutory aggravating circumstances are not supported. *State v. Monroe,* 397 So.2d 1258 (La.1981); *State v. Williams,* 383 So.2d 369 (La.1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 899 [66 L.Ed.2d 828];

*State v. Martin,* 376 So.2d 300 (La.1979), *cert. denied,* 449 U.S. 998, 101 S.Ct. 540 [66 L.Ed.2d 297].

The jury properly found that at least one statutory aggravating circumstance existed, that is, defendant was engaged in the perpetration of armed robbery when the victim was murdered; *therefore, we consider it unnecessary to inquire whether the jury correctly found that the other aggravating circumstances existed.*

*State v. Mattheson,* 407 So.2d 1150 at 1166 (La.1981) (emphasis added).

The citation in *Monroe* to the Georgia rule as construed in *Gates* and the Louisiana Supreme Court's own restatement of that rule in *Mattheson* demonstrate that Louisiana has adopted the Georgia rule. This is not surprising considering that Louisiana had previously adopted, in large part, the Georgia capital sentencing procedure. "The Georgia sentencing scheme . . . serves as a model for our sentencing procedure (C.Cr.P. 905–905.9)." *State v. Culberth,* 390 So.2d 847, 849 (La.1980). *Compare* La.Code Crim.Proc.Ann. art. §§ 905.4, 905.5 (West 1976) and Rule 28, La. Supreme Court Rules, *with* Ga.Code Ann. § 27–2534.1 (Supp.1975).

But while the Louisiana Supreme Court has adopted the same rule as the Georgia Supreme Court, it has provided us with no more guidance as to the state law premises for that rule than the Georgia Supreme Court has provided. The majority has itself supplied a number of what must be classified as state-law premises for the Louisiana rule, without benefit of a single citation to

Louisiana law. We have no warrant to do for Louisiana what the Supreme Court has refused to do for Georgia. If the majority has correctly disposed of the *Witherspoon* issue (which I doubt, see Part I, *supra*), then we are compelled by *Zant* to certify to the Louisiana Supreme Court[10] the same question as the United States Supreme Court certified to the Georgia Supreme Court. I dissent from the implicit decision of the majority not to do that.

*C. What Are the Implications of Zant for Our Habeas Review?*

*Zant* involves more than a procedural detour to permit the state court to fill in the rationale for its action. Instead, the reason for the certification appears to be the Court's concern both with the way in which under Georgia law the jury arrives at a decision to assess the death penalty and with the function of the Georgia Supreme Court in reviewing the sentence.[11] Williams relies on both as grounds for habeas relief. The dual prongs of the Supreme Court's inquiry stem, at least in part, from the jury-appellate review process contemplated by *Gregg v. Georgia, supra.* In *Gregg,* the opinion of Justices Stewart, Powell and Stevens asserts that the death penalty "could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner." 428 U.S. at 188, 96 S.Ct. at 2932. That opinion goes on to say:

*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of

**10.** The Louisiana certification rule provides:

When it appears to the Supreme Court of the United States, or to any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning

such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.

The provisions of this rule may be invoked by the Supreme Court of the United States or any circuit court of appeal of the United States upon its own motion or upon the suggestion or motion of any interested party. Louisiana Supreme Court Rule 12 (West 1981).

**11.** Presumably since *Zant* is a habeas case, the Court will also be concerned with the role of a habeas court in reviewing the constitutionality of Stephens' sentence.

whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.

*Id.* at 189, 96 S.Ct. at 2932. The opinion declares that a carefully drafted statute pointing to the main circumstances of aggravation and mitigation that should be weighed and weighed against each other provides guidance to the sentencing authority and reduces the likelihood that the sentencing authority will impose a sentence that is capricious or arbitrary. The opinion of Justice White in *Gregg*, concurred in by The Chief Justice and Justice Rehnquist, also placed strong emphasis on the role of statutory aggravating circumstances in limiting jury discretion. *Gregg v. Georgia*, 428 U.S. at 222, 96 S.Ct. at 2947. A majority of the Court, therefore, emphasizes the critical importance of channeling jury discretion, *i.e.*, of providing the jury with standards to guide its use of the information relevant to the imposition of sentence. *Id.* at 195, 96 S.Ct. at 2935. Finally, the opinion of Justices Stewart, Powell and Stevens also emphasizes the "further safeguard of meaningful appellate review" of "the factors [the jury] relied upon in reaching its decision" as a further safeguard against the arbitrary or capricious imposition of the death penalty. *Id.* (emphasis added). In Georgia (as in Louisiana, see note 6, *supra*), the jury is required by statute to list those factors, thereby facilitating appellate review.[12]

Within that general framework of guided jury discretion and meaningful appellate

review, the opinion of Justices Stewart, Powell and Stevens in *Gregg* then addresses specifically the claim that the aggravating circumstance there involved (the offense was "outrageously or wantonly vile, horrible and inhuman") was so broad and vague as to leave juries free to act as arbitrarily and capriciously as they wish in deciding whether to impose the death penalty. The opinion agrees that it is arguable that this circumstance could be found in any murder, but concludes that there is no reason to assume that the Supreme Court of Georgia would adopt such an open-ended construction. By looking to the Supreme Court of Georgia to weed out those cases in which an overly broad construction of the aggravating circumstance is applied by the jury, the opinion again made "meaningful appellate review" an integral part of the constitutionality of the death penalty provided for in the Georgia sentencing scheme. This critical function of appellate review may help to explain why it is that the Court has thus far declined to adopt Justice Marshall's position, as expressed in his concurring opinion in *Godfrey v. Georgia*, 446 U.S. at 436–37, 100 S.Ct. at 1769, that the jury instructions must themselves include the narrowing construction of potentially overbroad aggravating circumstances. It seems to me, therefore, that a habeas court assessing the constitutionality of a death sentence imposed under a statutory scheme such as either of the Georgia-Louisiana twins must review both the degree to which the jury's discretion was suitably channeled and the

---

**12.** While the Court in *Gregg* did not specifically address the issue presented in *Zant* and *Williams*, since that issue ("nuance," per *Zant*) was not presented in *Gregg*, it seems to me that the explicit reference in the opinion of Justices Stewart, Powell and Stevens (*Gregg*, 428 U.S. at 195, 96 S.Ct. at 2935) to the existence of meaningful appellate review of the factors relied upon by the jury in reaching its decision and specified by the jury in its Recommendation suggests that those Justices may have thought that the Georgia Supreme Court would, as a matter of state law, not to mention generally accepted principles of appellate review, review all those factors and vacate the sentence if any was unsupportable. In *Gates v. State*, 244 Ga. 587, 261 S.E.2d 349, 358 (1979),

*cert. denied*, 445 U.S. 938, 100 S.Ct. 1332, 63 L.Ed.2d 772 (1980), the Georgia court has declined *as a matter of state law* to do that, just as in *Monroe v. State*, 397 So.2d 1258, 1276 (La.1981), the Louisiana Supreme Court has declined *as a matter of state law* both to review all the factors relied on and to vacate the sentence if any is unsupportable. In *Zant*, the Court is asking, *inter alia*, for a more explicit statement of the principles of appellate review followed by the Georgia court. Depending upon what the Georgia court comes up with, the Court has indicated that it may have to reassess the constitutionality of the Georgia statute, at least as applied to multiple aggravating circumstances cases.

meaningfulness of the appellate review of that sentence.

### D. Was the Jury's Discretion Channeled?

The Louisiana legislature paid careful heed to *Gregg* and its companion cases. The statutory scheme lists nine aggravating circumstances directed to the circumstances of the offense and the character and propensities of the offender. The jury is permitted to consider only the nine aggravating circumstances listed. As noted above, the jury is required to make its recommendation on a statutorily prescribed form which calls for the jury to list the aggravating circumstances which it finds, thereby facilitating review by the Supreme Court of Louisiana, which is mandated to review every sentence of death to determine if it is excessive.

Insofar as channeled jury discretion is concerned, the majority opinion holds that in Louisiana the jury had only to find the existence of one valid statutory aggravating circumstance, under properly channeled discretion, to impose the death penalty. Having done so, the jury is thereafter free to consider the circumstances of the crime (but not facts not before the jury as a part of the proof of the crime) free of any "standards to guide its use of that information." *Gregg v. Georgia*, 428 U.S. at 195, 96 S.Ct. at 2935. Let us consider what that means in this case. The jury found the existence in this case of two aggravating circumstances—the offender knowingly created a risk of death or great bodily harm to more than one person, and the offense was committed in an especially heinous, atrocious, or cruel manner—that would not qualify as statutory aggravating circumstances as the Louisiana Supreme Court has construed them. What that means is that the list of the aggravating circumstances which the jury was permitted to consider was increased in this case to eleven, having been augmented by two circumstances that would not qualify as statutory aggravating circumstances. This flies in the teeth of the Louisiana statute which limits the jury to consideration of the nine aggravating cir-

cumstances listed in the statute. Conspicuously missing from Article 905.4, which lists the statutory aggravating circumstances, is the language found in Article 905.5(h)— "Any other relevant mitigating circumstance"—which is commonly viewed as giving the jury broad discretion to consider mitigating circumstances that might not qualify under the balance of 905.5. *Lockett v. Ohio*, 436 U.S. at 605, 98 S.Ct. at 2965. The majority's interpretation also means that the same behavior that would not support a finding of a statutory aggravating circumstance (and therefore the death penalty) if it were the only potential aggravating circumstance in the case *will* support a finding of a nonstatutory aggravating circumstance (and therefore contribute to the death penalty) if there is another validly found statutory aggravating circumstance in the case. None of this finds *any* support in Louisiana law, and if it accurately describes the process by which Williams' sentence was assessed, that fact alone may constitute a denial of due process. In any event, this process lacks the specific guidance of jury discretion in evaluating the circumstances of the crime mandated by *Gregg*.

### E. Is Louisiana Appellate Review "Meaningful?"

As noted above, key to analysis of the constitutionality of Williams' sentence is the question whether that sentence received meaningful appellate review. The Louisiana Supreme Court considered only whether the first aggravating circumstance was properly found and refused to review the other two under the court's rule that, even if the other two were unsupported by the evidence, the sentence would be affirmed. This procedure must be premised on the proposition that as a matter of law the jury's finding of the other two aggravating circumstances did not affect the jury's decision to recommend the death penalty. On this point, the reasoning of our decision in *Stephens*, as derived from *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed.2d 1117 (1931), is helpful to a determination of the adequacy of appellate review.

*Stephens v. Zant,* 631 F.2d at 406. How can a reviewing appellate court know the degree to which improper aggravating circumstances interacted with the proper aggravating circumstance and affected the jury decision to impose death? *Id.* As Justice Dennis of the Louisiana Supreme Court stated in reviewing a case similar to the one before us:

> On this record, if the jury believed the state's evidence, defendant's death sentence could constitutionally have rested on a finding that he was engaged in aggravated burglary, or that he knowingly created a risk of death or great bodily harm to more than one person. Since the finding of an aggravating circumstance is a necessary ground for, but does not require, the death penalty, however, it is impossible to say whether these grounds alone were the basis for the verdict. On the contrary, so far as we can tell, it is equally likely that the jury would have recommended life imprisonment if it had not thought that the defendant was guilty of killing in an especially heinous, atrocious or cruel manner.

Several United States Supreme Court decisions have clear and forceful application here. In *Bachellar v. Maryland,* 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); *Street v. New York,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the high court held that a criminal conviction must be reversed if the jury could have based the verdict on an unconstitutional statutory ground, even though there were other valid statutory grounds which the jury in fact may have employed. In those cases, since the defendants' convictions *"may have rested on an unconstitutional ground,"* [emphasis added] *Bachellar v. Maryland, supra,* 397 U.S. at 571, 90 S.Ct. at 1316, they were set aside.

. . . .

A verdict based upon evidence insufficient for a finding beyond a reasonable doubt is just as unconstitutional as one based on a facially unconstitutional statute. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*State v. Monroe,* 397 So.2d at 1281 (La.1981) (Dennis, J., dissenting).

In the case before us, it was impossible for the Louisiana Supreme Court, just as it is impossible for this court, to determine satisfactorily that the verdict was not affected by the jury's *mistaken* impression that this crime qualified under Article 905.4 (which the jury cited as authority for its Recommendation) as especially heinous, atrocious or cruel and that Williams' actions had presented the threat of death or great bodily harm to more than one person.

The majority seems to believe that, because "[t]he extra findings went to the gravity of his crime, not to the jury's *power* to impose the death penalty," the invalid aggravating circumstances had no impermissible effect on the jury's decision to recommend the death penalty. I submit that it is precisely the evaluation of the gravity of a crime which is the Supreme Court-mandated basis for *any* jury's decision to assess the death penalty. If the jury holds an erroneous impression of the gravity of the crime, its discretion may not be effectively channeled as commanded by *Gregg* and its progeny, nor can a reviewing court *know* how that misconception affected its decision.

As Justice Dennis so succinctly reasoned in *State v. Monroe, supra* :

> Moreover, I do not see how it rationally may be contended that a jury which erroneously believes it has legally found *three* aggravating circumstances to exist will not be more apt to recommend that the defendant be sentenced to death than a jury which correctly believes that the defendant is guilty of a crime involving two aggravating circumstances. To think otherwise is to ignore the realities of a capital sentencing hearing. . . . [I]t is highly unrealistic and purely artificial to think that a jury which believes *three* aggravating circumstances exist will not be more likely to impose a death penalty

than a jury which finds only [one]. Ordinary citizen jurors are likely to be led to the common sense conclusion that, if a defendant can be put to death for a murder involving just one aggravating circumstance found to exist the more likely it is that any mitigating circumstances are outweighed and that the death penalty is appropriate.

*Id.* at 1281–82 (Dennis, J., dissenting). Furthermore, Justice Stewart has echoed Justice Dennis' dissent in his dissent to the denial of certiorari in *Martin v. Louisiana* :

The Louisiana jury that imposed the death penalty upon the petitioner found two aggravating circumstances: (1) the petitioner had knowingly created a risk of death or great bodily harm to more than one person; and (2) he had committed the offense in an especially heinous, atrocious, or cruel manner. 376 So.2d 300, 311–312. In affirming the death sentence, the Louisiana Supreme Court held that the jury had properly found the first aggravating circumstance. *Id.*, at 312. It then reasoned that since the jury had the power to sentence the petitioner to death on the basis of a single aggravating circumstance, there was no need for it to review the correctness of the jury's finding of the second aggravating circumstance. *Ibid.*

Under the state death penalty statute, however, while the jury was permitted to impose capital punishment where it found only a single aggravating circumstance, it was not required to do so. La.Code Crim. Proc.Ann., Art. 905.3 (West Supp. 1980). The Louisiana court's reasoning, therefore, ignores the possibility that some of the jurors may have voted for the death sentence because of the existence of the second aggravating circumstance alone, or that others may have voted for the death penalty only because of the existence of the two aggravating circumstances.

The jury's verdict thus makes it impossible to determine whether some or all of the jurors may have relied on the existence of the second aggravating circumstance in reaching their decision to impose the sentence of death.

*Martin v. Louisiana,* 449 U.S. 998, 998–99, 101 S.Ct. 540, 541, 66 L.Ed.2d 297 (1980) (Stewart, J., dissenting from denial of certiorari).

Since the Louisiana Supreme Court could not hold that, as a matter of law, the challenged aggravating circumstances did not affect William's sentence, the failure of the Louisiana court to review those circumstances did not constitute the meaningful appellate review of the sentence that is critical to the constitutionality under the eighth and fourteenth amendments of Williams' sentence. If the majority is free under *Zant* to pass on the constitutionality of Williams' sentence at this point, which I doubt, then I dissent from the refusal of the majority to hold that sentence unconstitutional.

### III.

While I concur with the majority in its holding that Williams did not suffer ineffective assistance of counsel at the guilt or sentencing stage, I am constrained to disagree with one aspect of the majority's reasoning as to the claim of ineffective assistance of counsel at the sentencing phase.

One of Williams' claims of error was that his counsel failed to request limiting instructions on the statutory aggravating circumstances that were considered by the jury. The majority reasons that, because counsel stated the limitations *in his argument to the jury*, he mitigated any failure of the trial court to give limiting instructions. Suppose the jury instructions had left out an element of the crime, and Williams' lawyer failed to object. Is it now to be the law in this circuit that, if his lawyer told the jury that they needed to find that element in order to convict, he effectively mitigated the failure of the trial court to give the necessary instruction and he was therefore not ineffective?

I would, instead, hold that there was no need for an evidentiary hearing on the question because the apposite United States Supreme Court and Louisiana Supreme

Court law did not, in 1976, require the trial court to give any limiting instructions. As recently as three months prior to Williams' trial, the Louisiana Supreme Court, in *State v. English*, 367 So.2d 815, 823–24 (La.1979), gave its construction of the limitations on the aggravating circumstances before us (heinous, atrocious and cruel and risk of harm to more than one person). That court, however, did not explicitly find error in the trial court's failure to give limiting instructions nor did it establish the requirement that it do so.

Additionally, as set out in Part II above, the United States Supreme Court has never mandated that limiting instructions be given to the jury, but has implicitly adopted the position that it is in appellate review that limitation of aggravating· circumstances is to be accomplished. Thus, under the analysis developed by this court, the failure of the district court to grant Williams an evidentiary hearing was not error. There were no facts which could be developed at such a hearing that would have aided Williams' case.

IV.

Finally, the majority gives little attention to Williams' other grounds. One of Williams' main claims throughout his appeal is that no federal court has in this habeas corpus action addressed all his grounds for relief. I believe, in any habeas case, but especially in a capital case, each ground affecting the granting or denial of relief should be addressed. Thus I summarize the claims I have addressed or in which I concur with the majority:

Ground # 1 (*Witherspoon*)—a basis for reversal

Ground # 2 (ineffective counsel—sentencing phase)—I concur with the majority's conclusion, though in one case for a different reason

Grounds # 3–6 (errors relating to findings of invalid aggravating circumstances)—bases for reversal

Ground # 8 (failure to review on district basis)—I concur

**13.** The Louisiana Supreme Court determined there was no error as to claims nine and

Ground # 13 (ineffective counsel—guilt phase)—I concur

This leaves grounds seven, ten and eleven. While Williams was entitled to a district court determination of these grounds, he has not briefed these issues to this court. Thus, I believe findings as to these grounds are inappropriate.[13]

REAVLEY, Circuit Judge, concurring in part:

I concur in Parts I, II B and III of Judge Randall's opinion.

twelve. The majority agreed with the state court determination. I concur.